UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC SHARP,

                Plaintiff,

-against-

COUNTY OF PUTNAM, NEW YORK; TOWN OF CARMEL, NEW YORK; ADAM LEVY; ANDRES GIL; HEATHER ABISSI; LOURDES GONZALEZ; HENRY LOPEZ; and MICHAEL T. NAGLE; PUTNAM COUNTY DISTRICT ATTORNEY'S OFFICE; TOWN OF CARMEL POLICE DEPARTMENT,

                Defendants.

Civil Action No.:

**COMPLAINT**

18 CV 00780

(JURY TRIAL DEMANDED)

**PRELIMINARY STATEMENT**

1. Plaintiff's claims in this action are brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, the New York Constitution, and New York law. This action seeks damages arising from the unlawful and malicious criminal prosecution of Plaintiff in violation of his fundamental federal constitutional rights and irreparable harm to Plaintiff's reputation.

**PARTIES AND JURISDICTION**

2. This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because said claims arise under 42 U.S.C. § 1983, a law of the United States, and seek redress of the deprivation, under color of State law, of rights guaranteed by the Constitution of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff has complied with the requirements of New York General Municipal Law

1

Section 50-i by serving on the County of Putnam and the Town of Carmel a notice of claim on or about September 30, 2014; and a supplemental notice of claim on or about April 28, 2015. More than 30 days have elapsed since Plaintiff served those notices of claim and no offer of settlement has been made.

5. Venue is properly in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose in this judicial district.

6. At all times herein mentioned, Plaintiff was a resident of the County of Westchester, State of New York.

7. Defendant County of Putnam, New York ("Putnam County") is a public corporation existing by virtue of the laws of the State of New York.

8. Defendant Town of Carmel, New York ("Carmel") is a public corporation existing by virtue of the laws of the State of New York.

9. Defendant Adam Levy was at all relevant times the District Attorney of Putnam County. He is sued in his individual capacity.

10. Defendant Andres Gil was at all relevant times an Assistant District Attorney in Putnam County. He is sued in his individual capacity.

11. Defendant Heather Abissi was at all relevant times an Assistant District Attorney in Putnam County. She is sued in her individual capacity.

12. Defendant Lourdes Gonzalez was at all relevant times an Investigator in the Putnam County District Attorney's Office. She is sued in her individual capacity.

13. Defendant Henry Lopez was at all relevant times a Senior Investigator in Putnam County. He is sued in his individual capacity.

14. Defendant Michael T. Nagle was at all relevant times a Detective Sergeant in the

Town of Carmel Police Department. He is sued in his individual capacity.

15. Defendants Levy, Gil, Abissi, Gonzalez, Lopez, and Nagle are referred to collectively herein as the "Individual Defendants."

16. At all times relevant to this Complaint, the Individual Defendants acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York, County of Putnam, the Town of Carmel, and within the scope of their employment.

## FACTUAL ALLEGATIONS

17. Plaintiff is a civil and criminal defense attorney based in Westchester County, New York. Plaintiff has been a practicing attorney for seven years and was, at all times relevant, employed as a senior associate attorney of the law firm of Galgano & Associates.

18. Beginning in 2013, Plaintiff represented Lani Zaimi in connection with allegations that he sexually assaulted a waitress named M.A.

19. In February of 2014, a week prior to jury selection in the M.A. trial, Defendants arrested Mr. Zaimi based upon a new allegation by a woman named Kimberly Lorusso that she was sexually assaulted by Zaimi in November of 2012. Defendants launched an immediate media campaign to publicize the new arrest on the eve of trial.

20. Plaintiff represented Zaimi in a jury trial that commenced in February and concluded in March of 2014. Defendant Gil was one of two prosecutors in the *Zaimi* trial.

21. The *Zaimi* defense filed numerous motions with the trial court based upon credible allegations of police and prosecutorial misconduct in connection with the *Zaimi* investigation, including the purposeful destruction of important text messages and communications with the complainant witness.

22. Plaintiff investigated the charges relating to Kimberly LoRusso, suspecting that she

had been coerced or encouraged to falsely implicate Mr. Zaimi, and spoke to an individual named Quincy McQuaid, who was the boyfriend of Kimberly LoRusso's sister, Lia LoRusso.

23. McQuaid recorded several telephone conversations with LoRusso wherein they discussed her reasons for bringing the allegations against Mr. Zaimi, among other things.

### *Defendants Commence Witness Tampering Investigation*

24. Following the M.A. trial, the Defendants sought to fabricate allegations that Plaintiff conspired with McQuaid and others to bribe, tamper with and intimidate Kimberly Lorusso.

25. On April 30, 2014, Defendants Levy and Gonzalez met with Donna Cianflone, the mother of Kimberly and Lia LoRusso, and conducted a "controlled" telephone call supervised and recorded by law enforcement, between Cianflone and McQuaid. During the call, Cianflone made the unprompted solicitation that Kimberly would not testify against Zaimi if she received compensation.

26. Plaintiff was never mentioned during the April 30 controlled call, nor was Mr. Galgano.

### *Defendants Knowingly Submit False Warrant Applications*

27. The next day, on May 1, 2014, Defendant Gil submitted an application for a Court Order authorizing the installation and use of a pen register and "trap and trace" device, and the collection of cellular site location information, on McQuaid's cell phone.

28. In his sworn application, Defendant Gil stated that during the April 30 controlled call, McQuaid had "indicated that the money was coming from the defendant [Zaimi] and his lawyer was a go between." Defendant Gil knew this statement was false. Defendant Gonzalez in a supporting affidavit made the same statement, knowing it was false. The application was granted.

29.     Thereafter, Defendant Gil conducted further illegal controlled calls between Cianflone and McQuaid. Plaintiff was not mentioned during any of the controlled calls, which revealed no evidence of any scheme to bribe or tamper with a witness.

30.     On May 14, 2014, Defendant Gil applied for another Court Order, this time seeking authorization to install and use a pen register and "trap and trace" device, and to collect cellular site location information, on Mr. Galgano's cell phone.

31.     Once again, Defendant Gil's sworn application falsely characterized the recordings as evidencing a bribery conspiracy between McQuaid, Zaimi, and Mr. Galgano. Defendant Gonzalez again swore to an affidavit containing the same statements, knowing them to be false. The pen register application was granted.

32.     Simultaneously with the May 14 pen register application, Defendant Levy also applied for an eavesdropping warrant for McQuaid's cell phone. Defendant Gonzalez's supporting affidavit provided the Court with a blatantly misleading narrative underlying the theory of a conspiracy between McQuaid and Mr. Galgano, deleting portions of conversations and otherwise misrepresenting to the Court that exchanges incriminating Mr. Galgano in a conspiracy took place during controlled calls. The eavesdropping warrant was granted.

33.     On June 6, 2014, Defendant Levy applied for another Court Order, this time seeking authorization to eavesdrop on Mr. Galgano's cell phone. In his application, Defendant Levy stated that communications intercepted as a result of the wiretap on McQuaid's phone "reveal that McQuaid and Lia are conspiring with Galgano to offer a bribe to and engage in conduct meant to influence and persuade Kimberly LoRusso from testifying against Zaimi in Putnam County Court." When he swore to this statement, Defendant Levy knew that no such communications existed.

34. Defendant Nagle submitted a supporting affidavit falsely stating that controlled calls demonstrated that Kimberly LoRusso was offered money in exchange for not testifying, with Mr. Galgano as a go between. The eavesdropping warrant on Mr. Galgano's cell phone was granted.

### *Defendants Fraudulently Obtain Search Warrants for Plaintiff's Office*

35. On July 2, 2014, Defendants applied for search warrants to search Plaintiff's professional offices.

36. Defendant Nagle submitted his own affidavits in support of the warrant application.

37. In the sworn affidavit, Defendant Nagle repeated his knowingly false claim that recorded telephone calls established that Mr. Galgano acted as "a go between" to facilitate Zaimi's bribery of Kimberly Lorusso. The affidavit contained an assortment of other false statements, including a claim that Mr. Galgano had planned to travel to North Carolina to confront Kimberly and bribe her; that Mr. Galgano had met with McQuaid and Lia and directed them to bribe Kimberly in exchange for her agreement not to testify against Zaimi; that Mr. Galgano had promised to provide McQuaid and Lia with an apartment if Kimberly could be bribed successfully; and other statements which were knowingly false.

38. Defendant Nagle, who was intimately involved in the investigation, knew or should have known that the claims in his affidavits were false and that none were supported by any reliable evidence whatsoever.

39. As a result of Detective Nagle's knowingly false statements and material omissions to the court, search warrants were issued for Plaintiff's offices.

40. On July 2, 2014, dozens of law enforcement officers, including Defendants Nagle, Gonzalez, Karst, Russo and Gil, descended upon Plaintiff's professional offices and executed the

6

unlawfully obtained search warrant, without probable cause. Defendant Gil was being directed by Defendant Levy before and during the raids.

41. Defendants seized computers, hard drives, files, and other highly sensitive materials from Plaintiff's office, including numerous communications and documents protected by the attorney-client and work product privileges. Defendants notified local media, who covered the searches, broadcasting to Plaintiff's and Mr. Galgano's clients and prospective clients that their confidences were not safe from the prying eyes of law enforcement.

42. During the search of his professional offices, Plaintiff and all of Mr. Galgano's employees were ordered to remain seated at a table and were prohibited from leaving the premises unless they submitted to a personal search of their bodies.

43. Members of the search team threatened Plaintiff, telling him that he had better talk to them and "help himself." Defendants brought Plaintiff to the copy room in the suite whereupon Defendant Gil intimidated him and demanded that he provide his investigative team with information.

44. The execution of Defendants' unlawful search warrants turned up no evidence of Plaintiff's or Mr. Galgano's involvement in any witness tampering or bribery conspiracy. However, the removal of virtually every computer and electronic storage device in his professional offices completely disabled the law firm of Galgano & Associates.

45. As a result of the search, clients at Galgano & Associates terminated their engagements with the Galgano law firm and many clients demanded their files and refunds of retainer fees paid for legal services.

46. The decision to conducting a search via a publicized raid rather than a subpoena was unjustified and exacerbated the harms caused by Defendants' fabricated evidence against

Plaintiff and Mr. Galgano.

47. During the search of Plaintiff's professional offices, police alleged to have discovered controlled substances in Plaintiff's and Mr. Galgano's constructive possession. As a result, Plaintiff and Mr. Galgano were arrested and were arraigned in Greenburgh Town Court in Westchester County.

48. Nearly a year later, the Westchester County District Attorney's Office dismissed the charges against Plaintiff, conceding that there was no probable cause for the issuance of the warrants to search his office.

*Defendants Use Misconduct to Indict Plaintiff; The Indictment is Dismissed as Improper*

49. Despite the ongoing absence of any credible evidence of Plaintiff's guilt, Defendants sought his indictment and Plaintiff's indictment before a Putnam County grand jury.

50. On or about August 20, 2014, Plaintiff was indicted on charges of conspiracy, criminal purchase or disposal of a weapon, and perjury. Mr. Galgano was also indicted and charged with bribing a witness, tampering with a witness, and conspiracy.

51. Plaintiff was in Belize on his honeymoon on August 20, 2014, and surrendered upon his return. At Plaintiff's arraignment, the Court set bail at $60,000 cash or bond and required Plaintiff to surrender his passport.

52. On January 28, 2015 the County Court of Putnam County issued a decision dismissing the indictment against Plaintiff. In a separate decision on the same date, the court also dismissed the indictment against George Galgano, deeming the prosecution as a "rare case" in which prosecutorial error and misconduct required the dismissal of the indictment.

53. Upon information and belief, the decision to indict Plaintiff was motivated by a desire to have him "flip" and falsely implicate Mr. Galgano for crimes he did not commit. Plaintiff

refused to participate in the Defendants' conspiracy to violate Mr. Galgano's constitutional rights. In dismissing the indictment against Plaintiff, the court held that there was absolutely no evidence that he engaged in any criminality.

54. Among the errors mentioned by the court were the repeated mischaracterizations of audio recordings through the testimony of Defendant Nagle, and the introduction of fraudulent transcripts prepared by Defendant Gil mandated dismissal of the case against Mr. Galgano. The court noted that these transcripts included inculpatory statements never made and failed to include exculpatory statements that were clearly audible on the recordings.

55. Notwithstanding the numerous instances of misconduct, too frequent and pervasive to be regarded as anything other than intentional, the court granted the Defendants leave to present the case to another grand jury. Defendants did present the case to another grand jury as against Mr. Galgano, but not the Plaintiff, whom they instead subpoenad and compelled to testify against Mr. Galgano at subsequent grand jury proceedings conducted by Defendant Abissi and Defendant Levy.

56. Prior to the issuance of the search warrants, Defendants Levy, Abissi, Gil and Pascale all were privy to the true content of the consensual recordings and intercepted communications. After the dismissal of the indictment against Plaintiff, Defendant Gil admitted that he created the inaccurate transcripts of these recordings. He further admitted that he personally drafted Defendant Nagle's fraudulent affidavits that were used to unlawfully violate Plaintiff's and Mr. Galgano's privacy rights. Each of the Defendants employed by the Putnam County District Attorney's Office had an opportunity to prevent Defendant Nagle's submission of the false statements in support of the warrants but none of them did anything to prevent the issuance of the warrants or the ensuing unconstitutional searches of Plaintiff and Mr. Galgano and their property.

57. Defendants Levy, Gil and Abissi presented the *Galgano* case to another grand jury. On July 10, 2015, Mr. Galgano was again charged with bribing a witness, attempted bribing a witness, tampering with a witness, conspiracy, and criminal impersonation. Plaintiff was not charged in this indictment.

58. Mr. Galgano and Ms. Capolongo both moved to dismiss the indictments. In a written decision dated October 26, 2015, the Court found "no evidence that [Galgano] or *any accomplice* (including McQuaid) intended to confer a benefit, intended to offer a benefit, or intended to agree to confer a benefit on Kim Lorusso." In making this finding, the court noted that "…on numerous occasions during the Grand Jury proceedings, [McQuaid] explained that the taped conversations give the false impression that he had threatened or offered compensation to Kim Lorusso not to appear in the grand jury or trial."

59. In addition to dismissing the indictment based upon an absence of *any* evidence of wrongdoing, the court noted that that the prosecution "surprisingly" engaged in much of the same misconduct that caused it to dismiss the first indictment.

60. All significant investigative and prosecutorial decisions in connection with the indictments against Plaintiff and Mr. Galgano were either made or approved by Defendant Levy personally. Defendant Levy personally applied for all eavesdropping warrants; on the one occasion when an eavesdropping warrant required retroactive amendment while Defendant Levy was absent from the jurisdiction, Defendant Levy personally designated the Assistant District Attorney to make such application in his absence. All search warrant applications were approved by Defendant Levy. Defendant Levy personally supervised all grand jury proceedings in the case, and appeared at all significant court proceedings.

61. In addition, Defendants, the County of Putnam New York, the Town of Carmel and

the Town of Carmel Police Department, and Defendant Levy also displayed deliberate indifference to Plaintiff's constitutional rights by failing to train and supervise Defendant Levy's subordinate Assistant District Attorneys, as well as those police officers participating in this investigation, regarding the difference between criminal conduct and innocent conduct under circumstances present in this case; the proper requirements for trap-and-trace, pen register, and eavesdropping warrants; the proper requirements for a search warrant; the proper execution of a search warrant; the proper conduct of grand jury proceedings; the evidence required to lawfully indict for the crimes charged; and the prosecutor's duty to disclose exculpatory evidence.

62. This all was part of a pattern and practice by Defendant Levy of unlawfully pursuing investigations and securing indictments against persons whom he perceived to be a threat to his popular support in the Putnam County community.

63. Defendant Levy implemented a policy of his office to investigate and prosecute his political enemies, irrespective of whether there was a good faith basis for the investigation. At least two senior prosecutors in Defendant Levy's office resigned or were terminated because they refused to comply with his unlawful policy of targeting, framing, maliciously prosecuting and engaging in other unethical and unlawful acts against individuals whom he deemed enemies.

64. To this end, Defendant Levy and other Defendant members of the District Attorney's Office, including Defendants Gil, Gonzalez and Lopez acted outside their traditional roles as prosecutors by investigating the case against Plaintiff and Mr. Galgano and, among other misconduct, fabricating evidence, committing perjury and causing witnesses to fasley implicate Plaintiff and Mr. Galgano in a non-existent criminal conspiracy. Defendant Levy and other Defendant members of the District Attorney's Office also acted outside their traditional roles as prosecutors by generating and marshalling false and adverse publicity against Plaintiff and Mr.

Galgano both to defame them and in an attempt to salvage Defendant Levy's political future.

*Plaintiff's Injuries and Damages*

65. As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff suffered loss of liberty and significant economic, physical and emotional injuries.

66. Plaintiff's ability to secure gainful employment and income has been severely impaired as a result of Defendants' unlawful conduct. His earning power and ability to support himself and his family have been permanently hampered by Defendants' destruction of his professional reputation and disruption of his law practice and related businesses.

67. Plaintiff has been publicly shamed, disgraced, ridiculed, and humiliated. Nothing can undo the reputational damage he has sustained.

68. Plaintiff incurred substantial legal fees defending against the malicious and meritless investigations and criminal charges that Defendants pursued against him.

69. Plaintiff was held in custody upon returning from his honeymoon before his first Putnam County arraignment as a result of these malicious and meritless invastigations and criminal charges, and was required to make a number of appearances in Putnam County Court in connection with the Defendants' baseless prosecution.

70. Plaintiff suffered severe emotional and mental anguish, pain and humiliation as a result of being maliciously investigated for and charged with crimes he did not commit and subjected to gross and illegal invasions of his office and personal effects. He continues to suffer mental anguish, suffering from sleeplessness and preoccupation about Defendants' violations of his privacy, the integrity of his home and the well-being of his daughter and wife.

71. Plaintiff was denied fundamental constitutional rights. His faith in the criminal

justice system has been deeply shaken.

## JURY DEMAND

72. Plaintiff hereby demands trial by jury in this action.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983: Malicious Prosecution – Against the Individual Defendants)

73. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

74. The Individual Defendants initiated, or caused the initiation of, criminal proceedings against Plaintiff, including without limitation, by fraudulently obtaining court orders authorizing the search of Plaintiff's offices, and permitting the seizure of evidence. The Individual Defendants also initiated, or caused the initiation of, criminal proceedings against Plaintiff and the fabrication of false statements and testimony by Quincy McQuaid and other witnesses.

75. There was no probable cause for criminal proceedings against Plaintiff, and the Individual Defendants knew or should have known as much.

76. The Individual Defendants acted with malice, as demonstrated by their fabrication of evidence, their egregious deviations from acceptable investigative activity, their reckless disregard of Plaintiff's rights, and their pursuit of Plaintiff's and Mr. Galgano's prosecution without probable cause.

77. The criminal proceedings against Plaintiff terminated in Plaintiff's favor when the indictment against him was dismissed.

78. The acts and conduct of the Defendants unlawfully restrained Plaintiff's liberty and amounted to malicious prosecution in violation of the Fourth Amendment to the United States Constitution.

79. Upon information and belief, the Individual Defendants knew of one another's

wrongful acts and displayed deliberate indifference to Plaintiff's constitutional rights by failing to rectify one another's wrongful acts.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983: Denial of Due Process—Against the Individual Defendants)

80. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81. The Individual Defendants created false information and fabricated evidence likely to influence the outcome of the proceedings against Plaintiff, including without limitation, the false statements and testimony of Quincy McQuaid and other witnesses.

82. The Individual Defendants forwarded this false and fabricated information to prosecutors with the purpose of causing criminal proceedings to be instituted and continued against Plaintiff, even though they could reasonably foresee that their actions would contribute to the deprivation of Plaintiff's liberty.

83. The Individual Defendants, individually and collectively, manufactured, acted in concert to manufacture, aided and abetted each other to manufacture, and/or conspired to manufacture, statements and testimony that they intended to use against Plaintiff in criminal proceedings, and/or which they caused to be used as a basis for Plaintiff's prosecution.

84. The Individual Defendants did so knowing that the testimony was false or was highly likely to be false, and/or with deliberate indifference to whether it was true or false.

85. Without the false or utterly unreliable testimony that the Individual Defendants wrongfully manufactured or knew had been wrongfully manufactured, there was no basis to prosecute Plaintiff.

86. The aforesaid conduct of the Individual Defendants deprived Plaintiff of his right to due process and a fair trial under the Fourteenth Amendment of the United States Constitution.

87. The Defendants, including the Defendant Prosecutors, engaged in a pattern and practice of intimidating and coercing witnesses like M.A., Kimberly Lorusso, McQuaid and Lia into changing their initial truthful account into one that inculpates the target of the Defendants' conspiracy. This misuse of investigative techniques is a perversion of justice and falls outside the proper function of a prosecutor.

88. Upon information and belief, the Individual Defendants knew of one another's wrongful acts and displayed deliberate indifference to Plaintiff's constitutional rights by failing to rectify one another's wrongful acts.

### THIRD CAUSE OF ACTION
**(Malicious Prosecution Under New York Law – Against All Defendants)**

89. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90. The Individual Defendants initiated, or caused the initiation of, criminal proceedings against Plaintiff, including without limitation, by fraudulently obtaining court orders authorizing the collection of evidence and fabricating the false statements and testimony of Quincy McQuaid and other witnesses.

91. There was no probable cause for criminal proceedings against Plaintiff, and the Individual Defendants knew or should have known as much.

92. The Individual Defendants acted with actual malice, as demonstrated by their fabrication of false evidence, their egregious deviations from acceptable investigative activity, their reckless disregard of Plaintiff's rights, and their pursuit of Plaintiff's prosecution without probable cause.

93. The criminal proceedings against Plaintiff terminated in his favor when the indictments against him were dismissed.

94. Upon information and belief, the Individual Defendants knew of one another's wrongful acts and displayed deliberate indifference to Plaintiff's constitutional rights by failing to rectify one another's wrongful acts.

95. Under the doctrine of *respondent superior*, the official adoption of the Individual Defendant policies, practices and desiocions, the pervasive practice of allowing and continuing the Individual Defendants illegal policies, practices, and decisions, and the failure to train, supervise, or discipline the individual Defendants to eliminate these illegal policies, practices and decisions, the Individual Defendants to eliminate those illegal policies, practices and decisions, Defendants Putnam County, the Town of Carmel and the Town of Carmel Police Department and the Town of Carmel Police Department are liable for the tortious conduct of the Individual Defendants who were employed by each of them respectively at the times relevant to this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1. Compensatory damages in an amount to be determined;

2. Punitive damages against the Individual Defendants in an amount to be determined;

3. Pre-judgment interest as allowed by law;

4. An order awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court; and

5. Such other further relief as the Court may deem just and proper.

Dated: White Plains, New York
January 29, 2018

                                    Respectfully submitted,

By: _____
      Eric Sharp
      399 Knollwood Road, Suite 318
      White Plains, New York 10603
      Tel.: (914) 428-2323
      Fax: (914) 428-3298
      *Plaintiff*
      *Pro Se*