UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC SHARP,

                       Plaintiff,

              v.

COUNTY OF PUTNAM, *et al.*,

                      Defendants.

No. 18-CV-780 (KMK)

OPINION & ORDER

Appearances:

Eric Sharp, Esq.
White Plains, NY
*Pro Se Plaintiff*

Lewis R. Silverman, Esq.
Silverman & Associates
White Plains, NY
*Counsel for Defendants County of Putnam and Putnam County District Attorney's Office*

Robert J. Pariser, Esq.
Kevin D. Clinton, Esq.
Michael I. Goldman, Esq.
Lydecker Diaz
Melville, NY
*Counsel for Defendants Town of Carmel, Town of Carmel Police Department, and Michael T. Nagle*

Maurizio Savoiardo, III, Esq.
Michael A. Miranda, Esq.
Richad B. Epstein, Esq.
Miranda Slone Sklarin Verveniotis LLP
Mineola, NY
*Counsel for Defendants Adam Levy, Andre Gil, Heather Abissi, Lourdes Gonzalez, and Henry Lopez*

KENNETH M. KARAS, District Judge:

      Eric Sharp ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against

Putnam County, the Putnam County District Attorney's Office ("PCDAO"), the Town of Carmel ("Carmel"), the Town of Carmel Police Department ("CPD"), CPD Detective Sergeant Michael T. Nagle ("Nagle"), former Putnam County District Attorney ("DA") Adam Levy ("Levy"), Putnam County Assistant DAs Andre Gil ("Gil") and Heather Abissi ("Abissi"), and Putnam County DA's Office Investigators Lourdes Gonzalez ("Gonzalez") and Henry Lopez ("Lopez") (collectively "Defendants"), alleging claims of malicious prosecution and denial of due process. (Am. Compl. ¶¶ 109–25 (Dkt. No. 20).)

Before the Court are three Motions To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The first is filed on behalf of Putnam County and the PCDAO (the "Putnam County Defendants"). (Not. of Mot. (Dkt. No. 32).) The second is filed on behalf of Levy, Gil, Abissi, Gonzalez, and Lopez (the "Putnam County Individual Defendants"). (Not. of Mot. (Dkt. No. 37).) The third is filed on behalf of Carmel, the CPD, and Nagle (the "Carmel Defendants"). (Not. of Mot. (Dkt. No. 46).) For the reasons that follow, the Motions are granted.

I. Background

A. Factual History

The Court previously detailed many of the facts of this case in an Opinion & Order issued in a related case, *Galgano v. County of Putnam*, No. 16-CV-3572, 2018 WL 4757968, at *2–15 (S.D.N.Y. Sept. 28, 2018), *vacated in part on reconsideration*, 2019 WL 2235891 (S.D.N.Y. May 16, 2019). The Court recounts only those facts necessary for consideration of the instant Motions.

Plaintiff is a civil and criminal defense attorney based in Westchester County, New York. (Am. Compl. ¶ 32.) As of 2013, Plaintiff was employed by George Galgano ("Galgano") as a senior associate at his law firm, Galgano & Associates. (*Id.*) In 2013, Galgano and Plaintiff

2

served as counsel to Lani Zaimi ("Zaimi"), who was criminally charged in Putnam County, New York with sexual assault. (*Id.* ¶ 19.) Levy, as Putnam County District Attorney, led the prosecution, and Gil participated in the prosecution. (*Id.* ¶¶ 19, 22.) In February 2014, Zaimi was arrested on a separate sexual assault charge. (*Id.* ¶ 21.) A week later, Zaimi's trial began in the first case, which ended in a mistrial in March 2014 after the jury was unable to reach a verdict. (*Id.* ¶¶ 22–23.)

On April 30, 2014, Levy and Gonzalez, allegedly seeking to retaliate against Galgano and Plaintiff "for the manner in which the [first] matter was handled," began investigating whether Galgano and Plaintiff had conspired with others to tamper with a witness. (*Id.* ¶¶ 29–32.) Defendants conducted controlled calls, placed court-authorized pen registers and trap and trace devices on suspected conspirators' phones, and executed court-authorized searches of suspected conspirators' business. (*Id.* ¶¶ 29–83.) Plaintiff alleges that, throughout the investigation, Defendants engaged in misconduct and, in particular, made multiple false and fraudulent assertions in applications to the court. (*Id.*)

On August 20, 2014, Plaintiff was indicted on charges of criminal purchase or disposal of a weapon, perjury, and conspiracy to bribe a witness. (*Id.* ¶¶ 85–86.) Plaintiff thereafter surrendered to authorities and was later released on bond. (*Id.* ¶ 86.) On January 26, 2015, the indictment against Plaintiff was dismissed by a Decision & Order of the Supreme Court of the State of New York, County of Putnam. (*Id.* ¶ 87.) The court stated:

> A review of the [Grand Jury] minutes reveals that the evidence presented, viewed in the light most favorable to the People, does not establish every element of the offenses with which . . . Sharp is charged. Moreover, the cumulative effect of numerous evidentiary and other errors which occurred during the Grand Jury presentment also compels the court to dismiss the indictment. The People are, however, granted leave to represent to a new Grand Jury.

(*See* Decl. of Lewis R. Silverman, Esq. in Supp. of Mot. ("Silverman Decl.") Ex. B ("*Sharp* State

3

Ct. Op."), at 8–9 (Dkt. No. 33).)[1] As to the conspiracy counts, the court concluded that "there [was] simply no evidence whatsoever of [Plaintiff] entering into an agreement to commit the underlying substantive charges alleged" and that there was "an almost complete lack of corroborating evidence." (*Id.* at 9, 12.) As to the criminal purchase or disposal of a weapon count, the court concluded that the evidence to establish operability of the weapon — an element of the charge — was insufficient. (*Id.* at 13.) As to the perjury counts, the court concluded that "there [was] no evidence that [Plaintiff] swore to the truth of the contents of [a particular government form], that he falsely indicated that he was the actual purchaser of the shotgun[,] [or] that he intended to mislead a public servant." (*Id.* at 16.) Further, the court concluded that multiple evidentiary errors were committed during the grant jury presentation. (*Id.* at 16–22.) The Court therefore "ORDERED, that the instant Indictment is dismissed, with leave to the People to re-present to another Grand Jury." (*Id.* at 45.)

Defendants did not seek a second indictment against Plaintiff. (Am. Compl. ¶ 92.)

B. Procedural History

Plaintiff filed his initial Complaint on January 29, 2018. (Dkt. No. 1.) On May 18, 2018, Plaintiff requested leave to correct deficiencies in the initial Complaint, (Dkt. No. 18), which the Court granted, (Dkt. No. 19). Plaintiff filed the instant Amended Complaint on June 25, 2018. (Am. Compl. (Dkt. No. 20).) On July 13 and 16, 2018, Defendants filed letters seeking a pre-motion conference in anticipation of moving to dismiss. (Dkt. Nos. 21–23.) Plaintiff filed responsive letters on July 23, 2018. (Dkt. Nos. 24–26.) On July 25, 2018, the Court adopted a briefing schedule for Defendants' Motions. (Dkt. No. 27.)

---

[1] The Decision & Order may also be found at *People v. Sharp*, No. 14-CR-43, 2015 WL 4477670 (N.Y. Co. Ct. Jan. 26, 2015).

County Defendants' Motion To Dismiss and accompanying papers were filed on September 7, 2018. (Not. of Mot.; Silverman Decl.; Mem. of Law in Supp. of Mot. ("County Defs.' Mem.") (Dkt. No. 34).) The Individual Putnam County Defendants' Motion To Dismiss and accompanying papers were filed the same day. (Not. of Mot.; Decl. of Maurizio Savoiardo, Esq. in Supp. of Mot. ("Savoiardo Decl.") (Dkt. No. 38); Mem. of Law in Supp. of Mot. ("Indiv. County Defs.' Mem.") (Dkt. No. 39).) Carmel Defendants' Motion To Dismiss and accompanying papers were filed on September 19, 2018. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Carmel Defs.' Mem.") (Dkt. No. 51); Decl. of Robert J. Pariser, Esq. in Supp. of Mot. ("Pariser Decl.") (Dkt. No. 52).)

On October 9, 2018, Plaintiff filed an opposition to Defendants' Motions. (Decl. of Eric Sharp, Esq. in Opp'n to Mots. ("Pl.'s Decl.") (Dkt. No. 54); Mem. of Law in Opp'n to Mots. ("Pl.'s Mem.") (Dkt. No. 55).)

On October 26, Putnam County Defendants filed a reply, (Reply Mem. of Law in Supp. of Mot. ("County Defs.' Reply") (Dkt. No. 57)), as did Carmel Defendants, (Reply Mem. of Law in Supp. of Mot. ("Carmel Defs.' Reply") (Dkt. No. 56)). On October 29, 2018, Individual County Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Indiv. County Defs.' Reply") (Dkt. No. 59).)

## II. Discussion

Plaintiff brings two causes of action pursuant to 42 U.S.C. § 1983. First, Plaintiff alleges malicious prosecution in that Defendants "initiated . . . criminal proceedings against [him] . . . by fraudulently obtaining court orders authorizing the search of [his] offices, and permitting the seizure of evidence," knowing that they lacked probable cause, and that they engaged in "fabrication of evidence" and other "egregious deviations from acceptable investigative

activity." (Am. Compl. ¶¶ 109–16.) Second, Plaintiff alleges denial of due process in that Defendants "created false information and fabricated evidence likely to influence the outcome of the proceedings against [him], including . . . the false statements and testimony of . . . witnesses." (*Id.* ¶¶ 117–25.)

All Defendants seek dismissal of the Amended Complaint in its entirety on grounds that Plaintiff's claims are time-barred. (*See* County Defs.' Mem. 7–8; Indiv. County Defs.' Mem. 10–11; Carmel County Defs.' 9–11.)[2]

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

---

[2] In addition, Carmel Defendants argue that the CPD is not a suable entity, that Nagle is protected by qualified immunity, that Plaintiff fails to state a *Monell* claim, and that Plaintiff fails to state a malicious prosecution or denial of due process claim. (Carmel Defs.' Mem. 8.) Putnam County Defendants similarly argue that the PCDAO is not a suable entity, that Plaintiff fails to state a *Monell* claim, and that Plaintiff fails to state a malicious prosecution or denial of due process claim. (County Defs.' Mem. 1.) Individual County Defendants argue that Plaintiff fails to state a claim, that they are entitled to prosecutorial immunity, and that they are entitled to qualified immunity. (Indiv. County Defs.' Mem. 1–2.) Because Plaintiff's claims are clearly time-barred, the Court need not reach these arguments.

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

The Court is ordinarily obliged to construe pro se pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the strongest claims they suggest, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam). Because Plaintiff is an attorney,

however, he is not entitled to the special solicitude usually granted to pro se litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also Zappin v. Doyle*, No. 17-CV-8837, 2018 WL 2376502, at *6 (S.D.N.Y. Apr. 10, 2018) (declining to treat attorney proceeding pro se with special solicitude because he was an experienced litigator, had access to the court's electronic filing system, and had previously represented himself in multiple cases).

B. Analysis

1. Applicable Law

"The statute of limitations for claims brought under 42 U.S.C. § 1983 is generally the statute of limitations for the analogous claim under the law of the state where the cause of action accrued." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) (citation and quotation marks omitted). Here, New York's three-year statute of limitations for personal injury actions applies. *Id.* (citing, inter alia, N.Y. C.P.L.R. § 214(5)). However, while the length of limitations period is determined by reference to state law, "the time at which a claim . . . accrues is a question of federal law." *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotation marks omitted)).

2. Malicious Prosecution Claim

For malicious prosecution claims under § 1983, the statute of limitations begins to run when the prosecution "terminate[s] in the plaintiff's favor." *Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc) (quoting *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994)). A "favorable termination" occurs when the prosecution against the plaintiff has "conclusively" ended. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (citations omitted).

Here, the indictment against Plaintiff was dismissed on January 26, 2015. (*Sharp* State Ct. Op. 46 (noting date).) Plaintiff therefore had until January 26, 2018 to file suit. Because

Plaintiff did not file suit until January 29, 2018, (Compl. 17 (noting date)), his malicious prosecution claim is untimely.

Plaintiff raises two arguments in response. First, Plaintiff argues that the date of the decision is "not dispositive as to accrual" and that, instead, January 28, 2015 is the relevant date, as that was the date Plaintiff "received [the] decision . . . dismissing the indictment." (Pl.'s Mem. 4–5.) The upshot of this argument is that, because January 28, 2018 — three years after Plaintiff's proffered accrual date — was a Sunday, Plaintiff's filing of this action on Monday, January 29, 2018 was timely. (*See* Letter of Eric Sharp, Esq. to Court (July 23, 2018), at 1 (Dkt. No. 26).) This argument is meritless. As an initial matter, Plaintiff cites to no case, and the Court has found none, holding that the date of notification is at all relevant to the question of accrual. To the contrary, it is the decisional date — the date the prosecution is *terminated* — that is relevant. *See Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) (using the date the "charges . . . were dismissed" as the relevant date for accrual purposes); *Smith v. City of New York*, 1 F. Supp. 3d 114, 119 (S.D.N.Y. 2013) (same); *Mione v. McGrath*, 435 F. Supp. 2d 266, 269–70 (S.D.N.Y. 2006) (same).

Second, Plaintiff argues that, notwithstanding the date of the court's opinion dismissing the indictment, the court "granted" the government "leave to re-present to a new Grand Jury," (*Sharp* State Ct. Op. 9, 45), and thus the prosecution against him did not "conclusively" terminate in his favor until February 1, 2016, (Pl.'s Mem. 5), when the "action was dismissed and all pending criminal charges related to this action were also dismissed," (Pl.'s Decl. Ex. D (certificate of disposition of dismissal) (Feb. 8, 2016)).

The Court is sympathetic to this argument, for it may well be that, as of January 26, 2015, Plaintiff did not feel as if his case had conclusively terminated. Yet, Plaintiff cites to no case

9

indicating that, for purposes of the question of accrual, charges must be dismissed with prejudice for a prosecution to be conclusively terminated. To the contrary, the Second Circuit recently held that the entry of a *nolle prosequi* — the effect of which "is to terminate a particular prosecution against the defendant" but allows "the prosecutor [to] choose to initiate a second prosecution at any time before the limitations period expires" — constitutes a conclusive termination for claim accrual purposes. *Spak*, 857 F.3d at 463–64. In *Spak*, the Second Circuit acknowledged "that, strictly speaking, a *nolle prosequi* only terminates a specific prosecution by vacating a charging instrument" and "does not prevent a prosecutor from re-charging the same defendant for the same criminal conduct at some point in the future." *Id.* at 464. It noted, however, that, "[u]nder the common law . . . , a termination of the existing prosecution is sufficient for a malicious prosecution claim to accrue." *Id.* Put differently, "[s]o long as a particular prosecution has been 'conclusively' terminated in favor of the accused, such that the underlying indictment or criminal information has been vacated and cannot be revived, then the plaintiff has a justiciable claim for malicious prosecution," because "[a]t that point, all of the issues relevant to the claim . . . are ripe for adjudication." *Id.*

There is no meaningful distinction between this case and *Spak*. The state court's January 26, 2015 Decision & Order, which dismissed the indictment against Plaintiff in its entirety, (*see Sharp* State Ct. Op. 45), "terminate[d] a specific prosecution by vacating [the] charging instrument," *Spak*, 857 F.3d at 464. Once the indictment was dismissed, Plaintiff's malicious prosecution claim was "ripe for adjudication," notwithstanding the fact that the prosecution could have chosen to prosecute Plaintiff "for the same criminal conduct" by re-presenting the case to a grand jury and obtaining a separate charging instrument. *Id.* On this point, the case of *Rueda v. Kreth*, No. 01-CV-2819, 2005 WL 323711 (E.D.N.Y. Feb. 7, 2005), is instructive.

There, the plaintiff was arrested on drug-related crimes, but "the criminal charges . . . were [thereafter] dismissed upon the grand jury's vote of no true bill." *Id.* at *1. The plaintiff brought an action under § 1983 alleging malicious prosecution. *Id.* The court, in considering the question of accrual, concluded that "the criminal proceedings against [the plaintiff] were terminated . . . when the grand jury voted no true bill." *Id.* at *4. That was so notwithstanding that, as the court noted, "a no true bill from the grand jury might grant the target of the prosecution only temporary relief," for "[t]he government can usually choose to empanel another grand jury." *Id.* at 1 n.5 (quotation marks alterations omitted) (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 189 (2d Cir. 2000)). Here, similarly, the criminal proceedings against Plaintiff were terminated when the court dismissed the indictment, notwithstanding the possibility that the prosecution might thereafter empanel a second grand jury and seek a separate indictment against Plaintiff.

In sum, Plaintiff's malicious prosecution claim began accruing on January 26, 2015, when the court dismissed the indictment in its entirety, and expired three years later, on January 26, 2018.[3] Because Plaintiff did not bring suit until January 29, 2018, (*see* Compl. 17), his

---

[3] The Court notes that, assuming Plaintiff's malicious claim is timely, he would be required to establish the elements of that claim, which "are governed by state law." *Spak*, 857 F.3d at 461. "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations and quotation marks omitted). Dismissal with leave to re-present may not, under New York law, qualify as a "termination of the proceeding" required to establish the second element of a malicious prosecution claim. *See Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000) (holding, in merits analysis, that "dismissal without prejudice qualifies as a final, favorable termination *if* the dismissal represents the formal abandonment of the proceedings by the public prosecutor" (emphasis added) (citation and quotation marks omitted)); *see also Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) (holding, in merits analysis, that dismissal of an indictment with leave to re-present to a grand jury is not "a

11

malicious prosecution claim is time-barred.[4]

### 3. Denial of Due Process Claim

Plaintiff's denial of due process claim is based, at least in part, on the fabrication of evidence. (Am. Compl. ¶¶ 117–25 (arguing that defendants "created false information and fabricated evidence likely to influence the outcome of the proceedings against [him], including . . . the false statements and testimony of . . . witnesses").) A denial of due process claim based on fabrication of evidence "accrues (1) when a plaintiff learns of the fabrication and it is used against him, and (2) his liberty has been deprived in some way." *McDonough*, 898 F.3d at 266 (citations omitted). Under the first prong, the statute of limitations begins to run when the plaintiff "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief," *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (citation and quotation marks omitted), which is when "the plaintiff knows or has reason to know of the injury which is the basis of his action," *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (citation and quotation

---

final disposition" because "reinstitution of [the] prosecution was expressly provided by the court" (citing *Heaney v. Purdy*, 272 N.E.2d 550, 553 (N.Y. 1971)).

    *Smith-Hunter* and *Russell* are, however, merits analyses and thus not relevant to the question of accrual, for, as previously noted, "the time at which a claim for malicious prosecution . . . accrues is a question of federal law that is not resolved by reference to state law," and "[f]ederal courts apply general common-law tort principles to determine the accrual date." *Spak*, 857 F.3d at 462 (citations, quotation marks, and alterations omitted). Put differently, "[w]hile the same phrase — 'favorable termination' — is used in both the accrual analysis and the merits analysis . . . , it is analyzed under a different legal standard in each context. . . . What constitutes a 'favorable termination' may turn out to be the same in each context, but not necessarily so." *Id.* at 462–63.

    [4] Although application of this rule works to Plaintiff's disadvantage here, the purpose of the rule works to the benefit of plaintiffs broadly, for it permits the accused "to seek recovery . . . as soon as the charges are vacated" and does not require a prospective action "be delayed merely because the state remains free to bring a similar prosecution in the future." *Spak*, 857 F.3d at 466. Were the rule otherwise, "[t]his would encourage the filing of stale claims and ill-serve the purposes of speedy relief for those who have been wrongfully subject to prosecution." *Spak v. Phillips*, 138 F. Supp. 3d 159, 164 (D. Conn. 2015), *aff'd*, 857 F.3d 458 (2d Cir. 2017).

marks omitted). "The reference to knowledge of the injury does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." *McDonough*, 898 F.3d at 266 (citation, quotation marks, and alterations omitted).

Here, Plaintiff was indicted on August 20, 2014. (*See* Am. Compl. ¶ 85.) Plaintiff thereafter moved to dismiss the indictment on November 25, 2014. (*Sharp* State Ct. Op. 4.) In so moving, Plaintiff argued, among other things, that the "warrant application contained affirmative misrepresentations," that the "warrant application did not establish probable cause," and that the "warrant was impermissibly overbroad." (*Id.* at 2–3.) The court, in dismissing the indictment, ultimately did not reach these arguments. (*See id.* at 39 ("Since the court is constrained to dismiss the indictment for the reasons set forth above, it will not address [the] motion to controvert the search warrants.").) Nevertheless, because the indictment against Plaintiff was dismissed on January 26, 2015, (*see id.* at 46), Plaintiff knew by November 24, 2014 — or, at the latest, by January 26, 2015 — of his denial of due process claim. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 617 (E.D.N.Y. 2017) (holding that the plaintiff knew of due process claim on date prior case was dismissed).[5] Plaintiff therefore had until November

---

[5] Indeed, Defendants argue that Plaintiff knew of his denial of due process claim as early as September 30, 2014, when he filed a Notice of Claim, pursuant to N.Y. Gen. Mun. Law § 50-e, against Putnam County, the PCDAO, Carmel, and CPD, alleging "illegal search and seizure and other statutory and common law claims" on grounds that those entities "wrongfully obtain[ed] a search warrant . . . in bad faith, and without probable cause." (*See* Silverman Decl. Ex. C (Notice of Claim); Savoiardo Decl. Ex. M (same).)
Further, there is a colorable argument that Plaintiff knew of his denial of due process claim as early as August 20, 2014, the date of his indictment. *See McDonough*, 898 F.3d at 267 (holding that denial of due process claim began accruing "at the earliest, when [the plaintiff] was indicted and arrested and, at the latest, by the end of his first trial, after all of the prosecution's evidence had been presented"); *Blount v. Moccia*, No. 16-CV-4505, 2017 WL 5634680, at *12 (S.D.N.Y. Nov. 21, 2017) (dismissing fair trial claim as time-barred where the action was filed more than three years after the plaintiff was indicted).

13

24, 2017 (or, at the latest, until January 26, 2018) to file suit. Because Plaintiff did not file suit until January 29, 2018, (*see* Compl. 17), his denial of due process claim is time-barred.[6]

### III. Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted. The Amended Complaint is dismissed in its entirety. Dismissal is with prejudice. *See Vasquez v. Lazar*, No. 15-CV-8845, 2019 WL 1988576, at *8 (S.D.N.Y. May 6, 2019) (dismissing claims with prejudice where barred by the statute of limitations) (citation omitted).

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 32, 37, 46), to mail a copy of this Opinion to Plaintiff, and to close this case.

SO ORDERED.

DATED: May 24, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff does not appear to argue otherwise. (*See* Pl.'s Mem. 4–5 (arguing only that his malicious prosecution claim is timely); Carmel Defs.' Reply 2 (noting that Plaintiff "entirely fails to address the timeliness of his second cause of action for . . . denial of due process").)

14